# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### ALEXANDRIA DIVISION

KRISTEN FREDRICKS, JOSEPH V. CUFFARI, JOSEPH E. GANGLOFF, and JAMES M. READ,

*Plaintiffs*,

v.

COUNCIL OF THE INSPECTORS GENERAL ON INTEGRITY AND EFFICIENCY ("CIGIE"), INTEGRITY COMMITTEE("IC"); KEVIN H. WINTERS, Chairman, IC, in his official capacity; ROBERT P. STORCH, Vice-Chairman, IC, in his official capacity; GAIL S. ENNIS, Member, IC, in her official capacity; KIMBERLY A. HOWELL, Member, IC, in her official capacity; DALE A. CHRISTOPHER, Deputy Director for Compliance, U.S. Office of Government Ethics, in his official capacity; TOM MONHEIM, Member, IC, in his official capacity; CATHERINE S. BRUNO, Member, IC, in her official capacity; ALLISON LERNER, Inspector General, National Science Foundation, former Chair and Vice Chair, CIGIE, in her official capacity,

*Defendants*.

CASE NO. 1:23-CV-00442-RDA-LRV

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Dated:   July 14, 2023

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

John Vecchione, VSB No. 73828
Gregory Dolin (*Admitted pro hac vice*)
NEW CIVIL LIBERTIES ALLIANCE
1225 19th Street NW, Suite 450
Washington, DC 20036
(202) 869-5210 (telephone)
John.Vecchione@ncla.legal
Gregory.Dolin@ncla.legal
*Counsel to Plaintiffs*

Table of Contents

INTRODUCTION .................................................................................................................1

BACKGROUND AND FACTS ...........................................................................................1

STANDARD OF REVIEW .................................................................................................3

ARGUMENT .......................................................................................................................4

    I.    Each Plaintiff Has Been and Is Being Injured by Defendants' Unlawful Conduct and Procedures and the Claims Are Justiciable .................................4

        A.    Plaintiff Gangloff ...................................................................................7

        B.    The DHS Plaintiffs ...............................................................................8

    II.    The Claims Have Merit ..................................................................................10

        A.    The IC and CIGIE Are Unconstitutionally Structured, Causing Injury to Plaintiffs ..........10

        B.    The Scheme Delegates, in Violation of the Constitution, Government Functions to Private Parties ...............................................13

        C.    The APA Claim Should Be Sustained ................................................14

        D.    CIGIE Misreprsents Plaintiffs' Due Process Claims .........................15

CONCLUSION ..................................................................................................................18

**INTRODUCTION**

All of the Plaintiffs have standing and their claims, which allege years of unconstitutional and unlawful behavior made in bad faith by Defendants, are both ripe and state a claim for which this court is well suited to give redress.

**BACKGROUND AND FACTS**

The Defendants open with the importance of Inspectors General to the operation of Government.  Defendants' Memorandum in Support of the Motion to Dismiss ("Def. Mem.") at pp. 1-3.  Plaintiffs do not disagree with these assertions, but the Complaint is an allegation that the very benefits described are being undermined by CIGIE, the IC, and the IC's actions.  Indeed, Plaintiff Cuffari is such an IG whose work has been consistently stymied by an endless stream of meritless IC investigations.  The law, the facts in the Complaint and additional facts of which the Court can take judicial notice[1] wholly belie the Memorandum in Support of the Motion to Dismiss ("MTD").

"The membership of CIGIE and IC includes individuals who are neither appointed by nor are answerable to the President of the United States, and in several cases are members of the legislative branch.  5 U.S.C. § 424(b), (d)."  Complaint ¶ 9.  The status of the current and past IC members who are neither appointed to nor removable from the IC by the President remain the same.  Complaint ¶¶ 10-17.  The President cannot remove any of these Defendants from the IC.  Mr. Winters  is selected by Amtrak's Board of Directors, and Ms. Howell  by the Corporation for Public Broadcasting ("CPB"), a private non-profit corporation.  *Id.* ¶¶ 10, 13.

---

[1] As the Government notes, in a MTD the Court may take note of "matters of public record."  *Sec'y of State for Defence v. Trimble Navigation, Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007).  The letter to Mr. Gangloff is attached as Exhibit 3 to the Complaint.  The most recent inquiry which follows from it is attached hereto as Exhibit 1.

The Complaint also alleges that these inquiries, the sheer volume of which is found in Exhibit 2 to the Complaint, are a result of bad faith by the Defendants.  Furthermore, not only is the WilmerHale report, Complaint, Ex. 1, embarrassing to CIGIE and the IC, but IC threatened Mr. Cuffari with investigation and discipline for bringing his own complaints and making inquiries of CIGIE.  *Id.*  ¶¶ 27, 42.  The Complaint also alleges that the IC refused to investigate the problems at DHS OIG identified by Mr. Cuffari, and instead retaliated when Mr. Cuffari conducted his own investigation as he is required to do by law. *Id.* ¶¶ 60-73.

Defendants do not dispute that the IC always states the inquiry is in the subject's "personal capacity" no matter how implausible.[2]  Complaint ¶¶ 30, 68-73.  The Complaint also alleges how the usual process of the agency deciding whether it has equities in the investigation or any conflicts with the subject is vitiated by the peremptory assertion that every IC investigation considers acts taken "in the subject's personal capacity."  *Id.*  ¶¶ 68-73, 113, 119.

The IC denies the Plaintiffs a presumption of innocence and requires them to "refute" every aspect of an inquiry's allegations beyond a reasonable doubt or face further actions.  *Compare* Complaint ¶¶ 29, 120, 122, 133, 150 (IC process requires subject to refute the allegations in violation of due process of law) and 5 U.S.C. § 424(d)(7), *with* Def. Mem. at 5.  Further, the MTD agrees with the Complaint that failure to respond to even improper inquiries (*e.g.*, those explicitly excluded from IC's jurisdiction such as complaints dealing with an ongoing criminal matter) subjects the target and the IG or person authorized to produce records to "an independent finding of wrongdoing." *Compare* Def. Mem. at 6 n. 1, *with* Complaint ¶¶ 30, 40, 124-125.

---

[2] The utterly irrefutable falsity of this assertion can be ascertained by reviewing the Wilmer Hale report and the allegations against IG Cuffari that it was somehow wrongfully produced "in his personal capacity" even though it was approved by every budgetary step and officer or employee required to do so within the IG's office.  Complaint ¶¶ 33-38.

Since the Complaint's filing, the IC has contacted both Mr. Gangloff and Ms. Fredricks to sit for interviews. It is disingenuous for the Government to state that the Complaint does not allege a circumstance that was wholly in the Defendants' control, yet ignore the fact that such an event has taken place. Def. Mem. at 8. Mr. Gangloff is not subject to the Defendants' jurisdiction, as alleged in the Complaint, but the harassment and negative consequences of refusal continue. Complaint ¶¶ 5, 86, 88, 91, 92-95; a*nd see* 5 U.S.C. § 424(d)(4)(A) and (C) (definition of a staff member and jurisdiction).

## STANDARD OF REVIEW

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and "draw all reasonable inferences … in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus.*, 637 F.3d 435, 449 (4th Cir. 2011). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Soc'y Without a Name v. Comm'w of Va.*, 655 F.3d 342, 346 (4th Cir. 2011).

After reviewing the complaint and drawing all inferences in the plaintiffs' favor, the court may grant the motion to dismiss *only if* the plaintiffs have "failed to set forth fair notice of what the claim is and the grounds upon which it rests that make such a claim plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint will survive a motion to dismiss if it contains sufficient factual matter to state a claim for relief that is plausible on its face and provides more than labels and conclusions or a formulaic recitation of the elements of a cause of action. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). The rules do not require a probability of success but simply "more than a mere possibility that a defendant has acted unlawfully." *Twombly*, 550 U.S. at 556.

3

Faced with a motion under 12(b)(1), the Court will consider the allegations of the Complaint as evidence on the issue, and may also consider evidence outside the pleadings on a factual issue, all without converting the pleading to one for summary judgment. *Richmond, Fredricksburg & Potomac R. Co., v. U.S.*, 945 F.2d 765, 768 (4th Cir., 1991). And while the burden of invoking jurisdiction is on the plaintiff, dismissal is appropriate only if the jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law. *Id.*

## ARGUMENT

I. **EACH PLAINTIFF HAS BEEN AND IS BEING INJURED BY DEFENDANTS' UNLAWFUL CONDUCT AND PROCEDURES AND THE CLAIMS ARE JUSTICIABLE**

The MTD asserts that (1) the Plaintiffs claims are non-justiciable as there is no case or controversy within the meaning of Article III, (2) the claims are unripe, and/or (3) Plaintiffs lack standing. Def. Mem. at 9-11. All of these assertions lack merit.

Federal courts have subject-matter jurisdiction over cases or controversies that are justiciable. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559-60 (1992). A district court has an "unflagging obligation to exercise jurisdiction" that is conferred upon it. *Town of Nags Head v. Toloczko*, 728 F.3d 391, 393 (4th Cir. 2013) (citations omitted). Plaintiffs satisfy the *Spokeo v. Robins* 578 U.S. 330, 340 (2016) requirement that an injury must actually exits and be "real" and not "abstract" because the alleged injury is present and continuing. Plaintiffs here have also met their burden to     showing standing by demonstrating "(1) an injury in fact, (2) fairly traceable to the challenged conduct of the defendant, and (3) likely to be redressed by a favorable judicial decision." *Netro v. Greater Baltimore Medical Center, Inc.*, 891 F.3d 522, 525 (4th Cir. 2018)(citations omitted).. Plaintiffs alleged "such a personal stake in the outcome of the controversy' as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf." *Warth v. Seldin*, 422 U.S. 490, 498-99 (1975)(internal cites omitted)

4

It is well-established that standing can be found based on either tangible or intangible harms, so long as they are sufficiently "concrete" and "particularized.".  *See Spokeo*, 578 U.S. at 341.  When determining whether an intangible harm is an "injury in fact," a court may consider whether that harm is closely related to a harm that traditionally provided the basis for a legal action in Anglo-America law.  *Id.*  The violation of a procedural right can, in some instances, support standing as can "the risk of real harm."  *Id.*  The analogous traditional cause of action identified in *Spokeo* need not be an "exact duplicate in American history and tradition."  *TransUnion LLC v. Ramirez*, 141 S.Ct. 2190, 2204 (2021).  If the defendant has caused "physical or monetary injury to the plaintiff, the plaintiff has suffered a concrete injury in fact under Article III."  *Id.*  Intangible harms can be equally concrete for standing and include "for example, reputational harms, disclosure of private information, and intrusion upon seclusion."  *Id.* (internal citations omitted).  They also include protections "specified" in the Constitution.  *Id.*  Reputational harm is closely related to the traditional tort of defamation and can maintain satisfy the standing requirement.  .  *See id.* at 2209 (being labeled a "potential terrorist" sustained standing).  Further, a person, like plaintiffs here, subject to a risk of future harm "may pursue forward-looking, injunctive relief to prevent the harm from occurring." *Id.* at 2210*; see also Filazapovich v. Dept. of State*, 567 F.Supp.3d 83, 91 (D.D.C. 2021) (injunctive relief required only one plaintiff to have standing to challenge a generally applicable policy).

Actions taken by a Plaintiff in response to an unlawful threats by the Government cannot be classified as "voluntary," and the cost of those actions is enough to sustain standing.  *See FEC v. Ted Cruz for Senate*, 142 S.Ct. 1638, 1647 (2022) ("[A]n injury resulting from the application or threatened application of an unlawful enactment remains fairly traceable to such application, even if the injury could be described in some sense as willingly incurred.").  In *Cruz*, the Court rejected the Government's argument that Senator Cruz's decision to loan money to his campaign meant that any

injury from inability to repay the funds was self-inflicted.  The Court concluded that while Sen. Cruz may have loaned the money voluntarily, the injury (inability to recoup it) stemmed from the threatened enforcement of an illegal regulation.  The Court distinguished the case from *Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (1982) relied on by Defendants because in *Clapper*, plaintiffs took a variety of action not *in response* to any governmental action, but merely because they *imagined* that such actions are necessary to protect them from some future nefarious government conduct. *See Cruz*, ___ S.Ct. at ___ ("In *Clapper*…, the plaintiffs attempted to manufacture standing by voluntarily taking costly and burdensome measures that they said were necessary to protect the confidentiality of their communications in light of the Government surveillance policy they sought to challenge. Their problem, however, was that they could not show that they had been or were likely to be subjected to that policy in any event.").  It is for this reason that the Court concluded that the costly measures the *Clapper* plaintiffs there took were not traceable to a likely government action.  In contrast, here, every costly measure noted in the Complaint is a direct result of past, present and threatened government action against every Plaintiff.  Complaint ¶¶ 28, 36, 41, 67, 73, 74, 127.

The prudential ripeness doctrine developed in *National Park Hospitality Ass'n v. Dept. of Interior*, 538 U.S. 803, 807 (2003) and relied upon by the Defendants, offers no help to them because Plaintiffs are litigating "concrete disputes" with the Defendants and not merely the structure of the IC in the abstract.

The same is true of *Texas v. U.S.*, 523 U.S. 296 (1998).  There, Texas challenged § 5 of the Voting Rights Act, but was actually completely unaffected by the challenged provisions.  the Supreme Court concluded that Texas lacked standing because it was not going to speculate as to what would Texas' injury might be in the future if it ever became affected by the relevant provision. *Id.* at 300-301.  Here, the Court need not speculate about some future hypothetical injury.  Each of these plaintiffs is presently and continually suffering the hardships of being investigated, in bad faith,

by an unconstitutionally constituted agency, is presently and continually deprived of due process, and with a reputation-destroying report in the offing which they will have no opportunity to rebut.[3] In fact, on MTD's own terms, Plaintiffs are being particularly targeted. .   According to the Government, the IC opened only 80 cases and initiated 5 investigations.  Def. Mem. at 14.  Yet somehow a large portion of these investigations is directed at just these Plaintiffs

Unlawful investigations create a cognizable cause of action.  *See Clark v. Library of Congress*, 750 F.2d 89, 94 (D.C. Cir. 1984) ("He based his claim on a significantly intrusive investigation for which he alone was singled out by the Library on the basis of his peaceful association with a lawful political organization. …. We thus hold that Clark has presented this court with a justiciable controversy.").  This Court took the same approach.  *See Brandsasse v. City of Suffolk,* Va., 72 F. Supp. 2d 608, 614-15 (E.D. Va. 1999) (holding that endless investigation that does not allow decision on promotion constitutes a harm and that hardship prong is met by a retaliation claim).

A. **Plaintiff Gangloff**

Defendants argue that Mr. Gangloff, as an employee has no right to be free from investigations.  MTD at 11. (citing *Wiley v. Mayor of City Council of Balt.*, 48 F.3d 773, 777 (4th Cir. 1995 (Powell, J.)).  Defendants' argument suffers from a number of problems.  First, Defendants ignore that Mr. Gangloff risks an automatic finding of wrongdoing.  Instead, and without citation to authority, Defendants assert the automatic finding of wrongdoing may not and does not occur.  This statement is contradicted by *the very first footnote in Defendant's own motion.  See* Def. Mem. n.1.  Second, as the Complaint makes clear, Mr. Gangloff is *not* an employee of the Federal Government and he is certainly not a "covered" employee that CIGIE and the IC are authorized to investigate.  *See, e.g.,* Complaint ¶¶ 5-6.  The IC is unlawfully asserting jurisdiction over him, and (though it couches its

---

[3] As explained below each plaintiff also suffers from being subject to an unconstitutional body and complete lack of due process but this section addresses the other legally protected interests of each plaintiff.

7

invitations for interviews in the language of "voluntariness") is threatening Mr. Gangloff with an automatic finding of wrongdoing which will have significant personal, professional, and economic consequences for him.

On June 23, when they filed their motion, Defendants told this court that any future action on the part of Defendants against Mr. Gangloff was pure speculation. Yet,  on June 8, almost *two weeks prior* to that submission, Mr. Gangloff received an email from Stacey H. Meyers informing him he was still a subject of investigation in CIGIE Case No. 22-048.  *See* Exhibit 1.   Mr. Gangloff is thus put to an untenable choice—cooperate with Defendants, though they have no jurisdiction to investigate him, or risk being slandered and defamed by the threatened automatic assumption of wrongdoing.  This "choice" constitutes a present harm.  The declaratory and injunctive relief are necessary and available in this case to remedy the current and imminent harm.

### B.  The DHS Plaintiffs

The Defendants misstate the claim of the DHS Plaintiffs.  Def. Mem. at 13.  The gravamen of the Complaint is that these investigations are not part of some "rigorous threshold standard" but brought in retaliation and in bad faith.  *Id.*  The Complaint and every inference reasonably drawn from it must be determined in Defendants' favor.  The DHS Plaintiffs—Fredricks, Cuffari and Read—not only claim that the investigations are retaliatory, but also that by stripping them of the normal cooperation of their agencies' attorneys (via the falsehood that any complained-of act was taken in their "personal capacity"), Defendants are willfully and in bad faith, imposing unlawful burdens on them.

Defendants' assertion that Plaintiffs cannot be protected from investigation and that any cooperation is "voluntary," Def. Mem.  at 13-14, is nothing more than an attempt to dispute a factual assertion made in the complaint.  But, at the motion to dismiss stage, the Court must credit all allegations as true.  In any event, Defendants' own brief undermines their "voluntariness" claim,

as Defendants admit that failure to "voluntarily" agree to IC's requests results in an automatic finding of wrongdoing. *See* Def. Mem. n. 1. That is all that is required.

Defendants' assertion that having to take the time and effort to respond to endless (wrongful) inquiries and retain counsel are not cognizable harms are equally faulty. First, Defendants assertions are hard to square with applicable regulations. *See* 28 C.F.R. § 50.15(b) (default rule is to represent the individual unless not in agency's interest). This is another dispute that must be adjudicated in Plaintiffs' favor. These regulations are bolstered by an formal Office of Legal Counsel ("OLC") opinion January 4, 2023 which explains how common, ethical, and normal it is for the Department of Justice to aid a person investigated, even in his personal capacity, when there is no conflict between him and the agency, and the representation would serve agency's interests. *Retaining Private Counsel to Represent the DHS Secretary in Impeachment Processes*, 47 Op. O.L.C. 1, slip op. (Jan. 4, 2023), https://tinyurl.com/4fkr2xw9 .

Finally, all three of the DHS Plaintiffs are currently being injured and are threatened with further injury. For example, Jim Read has the additional injury of not being able to advise his client and proceed according to his best professional judgment. IG Cuffari must either refuse to cooperate with CIGIE and risk an automatic adverse finding or cooperate with CIGIE but risk violating Justice Department rules on sharing information about criminal investigations. Without a declaratory judgment or an injunction, Plaintiffs are in jeopardy of either violating their legal and professional obligations or being found in violation of some *ukase* of the IC. In addition to not having access to the documents and witnesses needed to respond to these requests, and being stripped of the normal protections of having agency counsel defend them when their interests overlap with the Government's, they also face the prospect of having a report produced to Congress and the President that does not have to include anything they have said in their defense. These reports are published on an official Government website https://tinyurl.com/4hpu5dn7, and will

almost certainly be reported on by the media.  As the Gangloff inquiry demonstrates, the timing and content of such reports is completely in Defendants' hands with no notice to Plaintiffs or this Court.

## II.   THE CLAIMS HAVE MERIT

### A.  The IC and CIGIE Are Unconstitutionally Structured, Causing Injury to Plaintiffs

This Court is not bound by *Jefferson v. Harris*, 285 F.Supp.3d 173 (D.D.C. 2018).  Even more critically, that case is outdated as it was decided before several Supreme Court decisions on the scope and importance of the Appointments Clause, as well as prior to the decisions reiterating the importance of access to district courts to challenge agencies' jurisdiction.  *See, e.g., Axon Enter., Inc. v. FTC*, __ U.S. __, 143 S. Ct. 890, 904 (2023)(Claim that plaintiff is "subject[] to an illegitimate proceeding, led by an illegitimate decision maker" is cognizable in federal court); *U.S. v. Arthrex*, 141 S. Ct. 1970, 1981 (2021)("[U]nreviewable authority wielded by APJs during *inter partes* review is incompatible with their appointment by the Secretary to an inferior office."); *Collins v. Yellen*, 141 S. Ct. 1761, 1787 (2021)(holding that "for cause" removal restriction violated the Constitution; an officer must be removable at will); *Seila Law LLC v. CFPB*, 591 U.S. __, 140 S. Ct. 2183, 2196 (2020)(appearing before an unconstitutional officer is a "here and now injury.") ; *Lucia v. SEC*, 138 S. Ct. 2044 (2018)(ALJs who hold continuing office established by law must be appointed in accordance with the Appointments Clause).  The heavy reliance on *Jefferson* is both misplaced and telling in light of the weight and direction of Supreme Court more recent and binding precedent.

Similarly, *Weiss v. United States*, 510 U.S. 163 (1994), is of no help to Defendants.  There, "*[a]ll* of the military judges involved in these cases … were already commissioned officers when they were assigned to serve as judges." *Id*. 170 (emphasis added).  That is not the case here.

It is undisputed that Mr. Winters is neither Presidentially appointed, nor supervised or removable by any Presidentially Appointed Senate Confirmed ("PAS") officer.  In fact, no one, not the President nor the heads of CIGIE can remove or control the members of the IC.  As the heads

of CIGIE have testified, there is no oversight or control of the IC by CIGIE.  The Complaint is replete with allegations sufficient to sustain an Appointments Clause challenge.  The members of the IC are not appointed to that position by the President, yet they investigate and can issue reports and recommendations that end a PAS-appointed officer's career or destroy his name.  Complaint ¶¶ 142, 143, 146 (no means of recusal); ¶ 148-149 (IGs do not make recommendations for adverse action or discipline but the IC does); 154 (disregards privileges held by PAS-appointed officers and violates separation of powers); ¶ 155 (neither rules made nor actions taken by the IC are controllable or reviewed by CIGIE); ¶ 158 (IC recommends automatic unreviewable finding of misconduct for failure to breach privilege).

The Complaint alleges and Defendants do not dispute that the IC functions as an autonomous entity and yet is not constituted exclusively of PAS-appointed members.  Complaint ¶¶ 174, 175.  At present four of the six members of the IC are not PAS.  Either that or it must be made up of inferior officers whose appointments must comply with the Appointments Clause and at present do not.  *Id.* ¶ 176.  Two IG members (of the four IGs) are appointed neither by the President to the head of any department. *Id.* ¶ 178.  An FBI designee and a designee of the Office of Government Ethics sit on the IC.[4]   5a U.S.C. § 11(d)(2)They, too, are not properly appointed "officers of the United States."

The IC's powers are significant.  As detailed in the Complaint and the Inspectors General Act of 1978, IC has authority to investigate allegations of misconduct leveled against scores, if not hundreds, of executive branch employees, including all PAS IGs; it renders findings and conclusions that are not subject to judicial review or, for that matter, any other review in the executive branch;

---

[4] Defendants' suggestion that Plaintiffs have no constitutional objection to the designees of the FBI and OGE is not supported by the Complaint which fairly attacks all non-PAS officers on the IC.

and it recommends discipline.  These powers mean the members of the IC must be properly appointed officers—but they are not.

Even granting Defendants' argument that the powers of IC are not significant, and therefore its members are mere employees, there is still an Appointments Clause violation because IC members are not supervised in the exercise of their IC duties by <u>anyone</u> in the executive branch, and the four non-PAS members of the IC are not removable by the President.  This stands in contrast to employees of the Justice Department who possess investigatory powers because they are at least supervised by properly appointed officers.

The Defendants have two responses to this, both unconvincing. First, they argue that the IC roles are "germane" to the IG roles of each member, and membership on the IC is only an additional duty of a given Inspector General.  Second, Defendants argue that IC merely makes recommendations which is not a "significant power."  Both claims are wrong.  As the Complaint notes, IC members' duties differ in significant regard from normal IGs and IC rules expand members' power far beyond that possessed by regular IGs.  (For instance, the IC claims it is a "Super IG" able to obtain any document from any agency—a power no IG has).  That is at least an issue of material fact which precludes a motion to dismiss.  Finally, Defendants argue that even if the Appointments Clause is violated with respect to some IC members, that is of no consequence because there is a quorum of properly appointed IGs.  Def. Mem. at 17.  First, that statement is wrong as a matter of fact because as the designees of FBI and OGE are not properly appointed, meaning that there *isn't* a majority of properly appointed officers of the United States.  The statement  is also wrong as a matter of law, because the presence of an improperly appointed person invalidates the action of an entire body, even if there is a quorum of proper appointees.  *See Nguyen v. United States*, 539 U.S. 69, 82 (2003) *(*noting that it is proper to "vacate the judgment entered by an

improperly constituted court of appeals, even when there was a quorum of judges competent to consider the appeal.").

## B. The Scheme Delegates, in Violation of the Constitution, Government Functions to Private Parties

In arguing that Count II should be dismissed, Defendants claim that any private or hybrid appointment to the IC is subordinate to CIGIE, so no constitutional objection to such an appointment can be maintained.  But as already discussed, the IC is not supervised by anyone.  CIGIE and its members abjure any power over it.  Furthermore The IG of CPB is not "subordinate" to either CIGIE or the President.  She wields power unchecked by anyone in the Executive Branch.  Complaint ¶¶ 185-187.  Neither she, nor the FBI or OGE representatives can be, *pace* Defendants' arguments, be classified as mere "consultants."  Instead, are integral members of the IC subject to no one's control, least of all the President's.  The Defendants state that there "is no suggestion that CPB is different from Amtrak," but that is just not true.  CPB is explicitly a private non-profit, albeit with a board that is appointed by the President.  *FCC v. League of Woman Voters of California*, 468 U.S. 364, 369 (1984)(CPB is a "nonprofit, private corporation.").  Amtrak is, as the Complaint states, a hybrid.  Either way, the provision of such vast power to investigate and issue reports recommending removal of a PAS officer ought not be in private hands under applicable precedent.  *Nat'l Horsemen's Benevolent & Protective Ass'n v. Black*, 53 F.4th 869 (5th Cir. 2022)(holding scheme that allowed a private entity to regulate was an unconstitutional delegation to private parties).  This point is reflected in the Supreme Court's non-delegation cases.  While the Court has allowed limited delegations of authority to government agencies, *see Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457 (2001), it forbids giving public power to private bodies.  "Such a delegation of legislative power is unknown to our law, and is utterly inconsistent with the constitutional prerogatives and duties of Congress."  *A.L.A. Schechter Poultry Corp. v. United States*, 295

U.S. 495, 537 (1935); *see also Dep't of Transp. v. Ass'n of Am. Railroads*, 575 U.S. 43, 62 (2015) (Alito, J., concurring) ("When it comes to private entities, … there is not even a fig leaf of constitutional justification" for delegation); *Nat'l Horsemen's*, 53 F.4th at 880.  Here, the IC can be controlled by the vote of an IG of a private party and is subordinate to no one.

### C.  The APA Claim Should Be Sustained

The Inspector General Act gives the IC authority to investigate alleged "wrongdoing" on the part of an Inspector General, certain high-level officials in an OIG, and the Special Counsel (an officer with specialized IG-like responsibilities).  *See* 5 U.S.C. § 424(d)(1), (d)(12)(B)(i).  The IG Act further provides that the IC "may prescribe rules or regulations" governing the handling of allegations concerning the Special Counsel, *id.* § 424(d)(12)(C), that the IC should follow CIGIE's standards for investigations when it investigates IG personnel, *id.* § 424(d)(7)(A), and that the IC may "establish additional policies and procedures necessary to ensure fairness and consistency" in how it handles allegations against IGs and officials in OIGs, *id.* § 424(d)(7)(B)(i).  The explicit grant of rule-making authority with respect to Special Counsel matters *only* stands in sharp contrast with the weaker language authorizing IC to create only "policies and procedures." As a matter of statutory construction, the conclusion is inescapable—Congress did not intend for the IC to have rule-making authority with respect to IG matters.  Moreover, even if the IC has rule-making authority with respect to complaints against IGs and other covered officials the Government's argument that the Integrity Committee Policies & Procedures (ICPP) are merely "procedural" rules exempt from the notice and comment requirements is unpersuasive.  To take just a few examples, the ICPP, section 2.D., purports to expand the IC's authority beyond those set out in statute to cover private citizens such as plaintiff Gangloff.  Similarly, section 7.A provides a substantive, rather than merely procedural interpretation of the statutory term "wrongdoing."  And ICPP's Addendum A purports to expand the IC's authority to cover any person tasked with the responsibility of

14

producing records and information sought by the IC.  All of these (and other similar) provisions cannot be dismissed as merely procedural but instead are a claim of substantive power.  Accordingly, the IC's failure to follow the APA's requirements prior to promulgating the ICPP renders the ICPP invalid.

The mere fact that IC claims authority to investigate *former* employees like Mr. Gangloff, necessarily means that ICPP is not "procedural."  *See AFL-CIO v. NLRB*, 57 F.4th 1023, 1041-42 (D.C. Cir. 2023)(NLRB union voting procedure impacted substantive rights and could not be maintained as internal housekeeping rule); *New York v. U.S. Dept. of Health and Human Services*, 414 F.Supp.3d 475, 520-521 (S.D.N.Y. 2019)(housekeeping statute not express authority to promulgate a rule on other entities' affairs, only its own).  CIGIE and the IC cannot traduce specific grants of authority for every agency through a housekeeping statute.  Nor can Defendants legitimately claim that a rule prohibiting targets of investigation from speaking with members of their own staff or receiving legal advice in their official capacity (as is the case with Messrs.. Cuffari and Read) is a mere housekeeping, internal rule.

### D. CIGIE Misrepresents Plaintiffs' Due Process Claims

The gravamen of both counts challenging Plaintiffs' Due Process challenge is that CIGIE and IC compel *them* to produce documents, respond to complaints, and justify their actions, all without ability to consult relevant documents or seek appropriate agency guidance.  Additionally, Plaintiffs assert that IC's rules and procedures put them in a legal *zugzwang*.

For example, the IC has put IG Cuffari in an untenable position.  If he declines to answer their questions, he is subject to a finding of misconduct for not cooperating in an IC inquiry, but if he does answer its questions, he will be breaching his obligation, as the head of an agency with law enforcement powers, to abide by the confidentiality principle, which is applicable to ongoing criminal investigations, as described in section 1-7.00 of the Justice Manual.  Similarly, Mr. Read

must either forego advising his client according to his best professional judgment, and risk professional sanctions, or provide such advice, and risk an adverse finding by CIGIE which has directed him not to provide advice to IG Cuffari in certain situations.

Defendants authority that no due process rights attach to subjects of investigation are inapposite. In *SEC v. Jerry T. O'Brien, Inc.*, the question before the Court was "whether the Commission must notify the 'target' of [its] investigation when it issues a subpoena to a *third party*." 467 U.S. 735, 737 (1984) (emphasis added). A "target" of an investigation has no interest in Government's conversations or exchange of information with third parties. No one has any right to control what a third party may say to the Government or vice versa. *Cf. id.* at 742-43. As the Court explained, "persons who might be *indirectly* affected by an investigation" do not have "an absolute right to cross-examine every witness called to testify" before a fact-finding body. *Hannah v. Larche*, 363 U.S. 420, 443 (1960) (emphasis added). But the Court never held that when the target of an investigation is himself required to provide evidence, testify, turn over documents, or otherwise spend time and resources to answer investigators' queries, he has no due process right.

Congress and its committees have broad power to conduct investigations. *See Watkins v. United States*, 354 U.S. 178, 187 (1957). As the Supreme Court cautioned, "broad" power is not synonymous with "unlimited power." *Id.* Thus, even Congress does not have the power "to expose the private affairs of individuals without justification in terms of the functions of the Congress." *Id.* "Investigations conducted solely for the personal aggrandizement of the investigators or to 'punish' those investigated are indefensible." *Id.* If Defendants were correct in their assertion that "Plaintiffs have 'no entitlement to any particular set of due process protections in connection with' an IC investigation," Defs. Mem., ECF-9 at 24 (quoting *Popovic v. United States*, 997 F. Supp. 672, 679 (D. Md. 1998)), then no one would be able to complain about "[i]nvestigations conducted solely for the

16

personal aggrandizement of the investigators or to 'punish' those investigated." *Watkins*, 354 U.S. at 187. Yet, according to Supreme Court precedent, such complaints are cognizable.

All of the cases cited by Defendants concern investigations into alleged wrongful conduct which did not involve forcing the target of investigation to participate in the investigation and provide information to the investigators. There is a constitutional right to due process if one is haled before an investigator, especially if the investigators "exercise[] an accusatory function." *Jenkins v. McKeithen*, 395 U.S. 411, 428 (1969).

Such due process may be more limited than at the adjudicative stage. *See Hannah*, 363 U.S. at 442 ("'Due process' is an elusive concept. Its exact boundaries are undefinable, and its content varies according to specific factual contexts."). In every situation where governmental authorities require participation of the target, procedural due process protections apply. *See e.g., Miranda v. Arizona*, 384 U.S. 436 (1966); *Dickerson v. United States*, 530 U.S. 428 (2000)( during a police investigation, a target must be advised of their constitutional rights). During the grand-jury phase of an investigation, a defendant also has due process rights. *See Peters v. Kiff*, 407 U.S. 493, 501 (1972) (plurality opinion)(right to a grand jury untainted by racial exclusion); *United States v. Kennedy*, 372 F.3d 686, 691 (4th Cir. 2004)(right against self-incrimination); *In re Taylor*, 567 F.2d 1183, 1186 (2d Cir. 1977)(right to consult an attorney) In testimony before legislative committees, investigative targets also have due process rights. *See Watkins*, *supra*. Legislative investigations are not due-process-free zones, and neither should IC proceedings be ones.

Plaintiffs alleged that CIGIE and the IC serve not as merely a gatherer of information and report writer, but as an accusatory instrument, much like a grand jury. *See* Complaint ¶¶ 149-150. Plaintiffs allege that in seeking information from them, as targets of investigation, CIGIE simultaneously prohibits them from consulting documents "on which the target of the complaint may have relied in reaching the decision that prompted the complaint. *Id.* ¶ 203. Indeed, the very

17

act of consulting documents or their custodians is viewed by Defendants as an additional act of misconduct. *Id.* ¶ 204. At the same time, failing to respond to CIGIE's inquiries triggers, as Defendants admit in the *very first footnote of their brief*, an automatic inference of misconduct and wrongdoing. MTD at 6 n.1.

Defendants cannot have it both ways—demanding cooperation on one hand under threat of issuing an accusatory instrument (much like a grand jury), while simultaneously denying the investigation's target the tools necessary to fully respond to the accusations leveled against him. Defendants' argument that Plaintiffs have no cognizable liberty or property interest at stake fares no better. As a licensed attorney, Mr. Read has a liberty interest, a first amendment right and a legal duty to provide his best legal advice to his client—DHS OIG. *United Transp. Union v. State Bar of Mich.*, 401 U.S. 576, 580 (1971) (holding a decree "bar[ring]" a union's "members, officers, agents or attorneys from giving any kind of advice or counsel" to a member concerning a legal claim violates the "commonsense proposition that such activity is protected by First Amendment.").

CIGIE restricts Mr. Read's ability to practice his profession consistent with its ethical norms. *See* Complaint ¶¶ 111-113. Because complying with CIGIE's directives can place Mr. Read at risk of losing his law license, CIGIE trespasses on his cognizable liberty, speech and property interests. The report produced by the IC also is published online and can cause enormous reputational damage without any prospect of review by a neutral arbitrator[5].

### CONCLUSION

For the foregoing reasons, the Court should deny Defendants' Motion to Dismiss and permit Plaintiffs to prosecute their claims.

---

[5] CIGIE has published on its website it will issue a report in at-least one of the investigations into plaintiffs.

18

Respectfully submitted,

/s/  John J. Vecchione
_____
JOHN J. VECCHIONE (Va. Bar No. 73828)
Senior Litigation Counsel
GREGORY DOLIN ( *pro hac vice forthcoming*)
Senior Litigation Counsel
NEW CIVIL LIBERTIES ALLIANCE
1225 19th Street NW, Suite 450
Washington, DC 20036
(202) 869-5210
john.vecchione@ncla.legal
greg.dolin@ncla.legal

*Counsel for the Plaintiffs*

Dated:  July 14, 2023

19

**CERTIFICATE OF SERVICE**

I hereby certify that on July 14, 2023, a copy of the foregoing was filed electronically. Service of this filing will be made on all ECF-registered counsel of record by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

Dated: July 14, 2023

/s/ John J. Vecchione
JOHN J. VECCHIONE

20