**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| KRISTEN FREDRICKS, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| COUNCIL OF THE INSPECTORS GENERAL | ) | No. 1:23-cv-442 (RDA/LRV) |
| ON INTEGRITY AND EFFICIENCY ("CIGIE"), *et al*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

JESSICA D. ABER
UNITED STATES ATTORNEY

LAUREN A. WETZLER
Chief, Civil Division

REBECCA S. LEVENSON
Assistant United States Attorney
Office of the United States Attorney
2100 Jamieson Avenue
Alexandria, Virginia 22314
Tel:    (703) 299-3760
Fax:    (703) 299-3983
Email: rebecca.s.levenson@usdoj.gov

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

CHRISTOPHER R. HALL
Assistant Branch Director

CHRISTOPHER A. EISWERTH
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L. Street, NW
Washington, DC 20044
Telephone:   (202) 305-0568
Facsimile:   (202) 616-8460
Email: christopher.a.eiswerth@usdoj.gov

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................. 1

ARGUMENT ....................................................................................................................... 2

I.     The Court Lacks Jurisdiction Over Plaintiffs' Claims.................................................. 2

     A.    *Mr. Gangloff Lacks Standing* ............................................................................ 2

     B.    *The DHS Plaintiffs Lack Standing* .................................................................... 5

     C.    *None Of Plaintiffs' Claims Is Ripe.*................................................................... 8

II.    Plaintiffs' Claims Fail As A Matter of Law ............................................................. 10

     A.    *There is No Appointments Clause violation (Count 1)* ....................................... 10

     B.    *Plaintiffs' Nondelegation Claim Fails (Count II)* ................................................ 13

     C.    *Notice And Comment Rulemaking Is Not Required (Count III)* ........................... 14

     D.    *Plaintiffs' Due Process Claims Fail (Counts IV and V)* ....................................... 16

     E.    *Plaintiffs Have Conceded Their Appropriations Clause Claim (Count VI)* ......... 19

CONCLUSION.................................................................................................................. 20

i

## INTRODUCTION

The Department of Homeland Security Inspector General, employees in the DHS Office of Inspector General (DHS OIG), and a former employee of the Social Security Administration Office of Inspector General (SSA OIG) seek to halt alleged Integrity Committee (IC) inquiries and investigations into allegations against them. That request is extraordinary, not just because misconduct investigations are a staple of a functioning government, but also because Plaintiffs' jobs are to conduct such misconduct investigations for their respective agencies.

Defendants previously demonstrated that Plaintiffs lack standing and that their claims are not ripe and fail on the merits. *See* Mot. to Dismiss, ECF No. 9 (June 23, 2023). Plaintiffs respond with a variety of flawed arguments. *See* Opp. to Mot. to Dismiss, ECF No. 13 (July 17, 2023).

First, Plaintiffs try to support their standing, the ripeness of their claims, their APA claim (Count III), and their due process claims (Counts IV and V) by arguing that they are being forced to choose between cooperating with the IC, on one hand, and facing an automatic finding of wrongdoing, on the other. But Plaintiffs do not face that choice. Under the authority they cite, only a person designated to provide the IC with requested information on behalf of an OIG could be subject to such a finding—not a subject who has properly recused from making decisions on the OIG's behalf in these circumstances. *See* IC's Policies and Procedures (ICPPs), Add. A. Because they can recuse from having that responsibility, they do not face the prospect of an alleged automatic finding under Addendum A. The DHS Plaintiffs also argue that they must have the assistance of DHS OIG's counsel to respond to the IC's inquiries and investigations, but DHS OIG's counsel represents the agency, not Plaintiffs personally, and cannot represent agency employees in response to a government misconduct inquiry or investigation. Plaintiffs' claims of imminent injury and due process violations are thus meritless, and their attempt to challenge these procedures (and the ICPPs) through the APA fail.

1

Second, Plaintiffs try to support their Appointments Clause (Count I), nondelegation (Count II), and due process claims (Counts IV and V) by asserting that the IC and its members operate without supervision and have authority that goes beyond investigating. However, the IC members are government officials who, in performing their primary duties, are supervised by the President or presidentially appointed officers who have the authority to remove them from their position. And the power of the IC members does not go beyond investigating allegations of misconduct and writing a report with their findings and recommendations. These claims thus fail.

For these reasons, and those addressed in detail below, the claims should be dismissed.

## ARGUMENT

## I.   The Court Lacks Jurisdiction Over Plaintiffs' Claims

### A.   *Mr. Gangloff Lacks Standing*

Mr. Gangloff has not alleged a legally cognizable injury and therefore does not have standing. *See* Mot. at 11-12. Plaintiffs' arguments to the contrary lack merit for several reasons.

First, Mr. Gangloff has apparently abandoned his primary claim of injury: that he was harmed by the IC failing (a) to let him respond to the allegations before initiating any investigation and (b) to inform him of the allegations in violation of the Inspector General Reform Act and the ICPPs. *See* Compl. ¶ 86. Defendants explained that those provisions, by their terms, do not create rights or benefits. *See* Mot. at 11-12 (citing 5 U.S.C. § 424(d)(11); *ICPPs* at 7, 15). Mr. Gangloff did not respond, effectively conceding the point. *See Amazon.com, Inc. v. WDC Holdings LLC*, 2023 WL 2815140, at *11 (E.D. Va. Apr. 6, 2023) ("where a party fails to respond to an argument it is 'effectively conceding' [it]").

Second, contrary to Plaintiffs' assertions, merely being subject to a misconduct investigation by itself does not "create a cognizable [injury]." Opp. at 7 (citing *Clark v. Libr. of Cong.*, 750 F.2d 89, 94 (D.C. Cir. 1984); *Brandsasse v. City of Suffolk*, 72 F. Supp. 2d 608, 614-

15 (E.D. Va. 1999)). Plaintiffs' own cases show that something more than being asked to answer questions voluntarily as part of a government investigation is required to state a cognizable injury. In *Clark*, for instance, there was standing because the investigation itself was chilling First Amendment-protected expression, *see* 750 F.2d at 94, and in *Brandsasse*, the investigation's existence prevented the plaintiff from being considered for promotion, *see* 72 F. Supp. 2d at 614. Plaintiffs point to "no case or historical practice holding" that being asked to answer questions is sufficient to state an injury in fact. *United States v. Texas*, 143 S. Ct. 1964, 1970 (2023). And Mr. Gangloff alleges no additional effect upon him.

Moreover, as explained above, refusing to submit to a voluntary interview as part of an investigation does not put Mr. Gangloff at risk of an automatic finding of wrongdoing here. He does not allege that he is an IG or someone authorized to act on an IC request for OIG records such that Addendum A would apply. Nor does he point to any other facts in the complaint showing an automatic finding of wrongdoing is plausible. So even if such a risk were sufficient to be an injury in fact, Mr. Gangloff has not made sufficient allegations showing that he currently faces that risk.[1]

Third, Mr. Gangloff's claim that he would be injured by being asked questions when the IC supposedly lacks "jurisdiction over him" because he is no longer "an employee of the Federal Government" is unavailing. Opp. at 7. Again, he identifies no case holding that just being asked to provide a voluntary interview, when no sanction results from refusing to do so, qualifies as an

---

[1] Plaintiffs suggest that the Court must accept as true their bare allegations that they are at risk of an automatic finding of wrongdoing if they do not cooperate with the IC. *See*, *e.g.*, Opp. at 8-9. That is incorrect for at least two reasons. First, determining whether Plaintiffs are subject to an automatic finding of wrongdoing requires interpretation of Addendum A—a question of law. Legal conclusions in a complaint receive no deference. *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012). Second, Plaintiffs bear the burden of establishing this Court's jurisdiction, and when their so-called factual allegations are challenged (as here), they must present evidence supporting them. *Beck v. McDonald*, 848 F.3d 262, 270 (4th Cir. 2017). They have not.

injury in fact in any circumstances. Nor does Mr. Gangloff allege that any investigation is solely investigating former employees, *see* Compl., Ex. 3 at 1, and so, even if Mr. Gangloff were not a proper *subject*, the IC would still be permitted to interview him as a *witness*.

In any case, the IC's jurisdiction is best understood to extend to former employees. By statute, the IC reviews misconduct allegations made against "staff members" who "report[] directly to an [IG]," 5 U.S.C. § 424(d)(1), (d)(4)(A)(i), such as an IG's chief counsel, Mr. Gangloff's former role, Compl. ¶ 81. Congress did not limit "staff members" to current employees, and no qualifier should be read into the statute to prevent the IC from discovering misconduct that has occurred while an employee is or was in federal service. Indeed, courts have repeatedly adopted more inclusive readings of similar terms. *See, e.g.*, *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341-45 (1997) (anti-retaliation provision of Title VII, 42 U.S.C. § 2000e-3(a) includes former employees); *Duckworth v. Pratty & Whitney, Inc.*, 152 F.3d 1, 6 (1st Cir. 1998) (same for Family and Medical Leave Act). Limiting the IC's jurisdiction here to current employees would stop the IC and CIGIE from developing forward-looking solutions to "increase the professionalism" of OIGs, 5 U.S.C. § 424(a)(2), and it would create perverse incentives by allowing employees accused of misconduct to shield their actions from scrutiny by resigning, *see Jurisdiction of Integrity Comm. When Inspector Gen. Leaves Off. After Referral of Allegations*, 30 Op. O.L.C. 122 (2006), 2006 WL 5779980, at *7.

Finally, Mr. Gangloff is mistaken that a recent request for a voluntary interview changes the calculus. *See* Opp. at 8.[2] Exhibit 1 to the opposition confirms that the interview is not

---

[2] Defendants' counsel learned of this request for an interview after filing the motion to dismiss. Defendants state that the alleged IC investigation, being conducted by DOJ OIG on the IC's behalf, is ongoing. Further, DOJ OIG has communicated with Mr. Gangloff by phone and email, including on June 8 to request a voluntary interview, *see* Opp., Ex. 1, which is now scheduled for August 3.

compulsory. *See* ECF No. 13-1 at 1 ("Please let me know *whether you are interested* in participating in a voluntary interview.") (emphasis added). Mr. Gangloff could refuse it without sanction but has not. And Exhibit 1 shows that the IC—through the Department of Justice Office of the Inspector General (DOJ OIG)—is providing him with "an opportunity to provide any information" that he "would like for [DOJ OIG, acting on the IC's behalf] to consider in connection with the investigation." *Id.* In the end, the IC investigation is not currently inflicting harm on Mr. Gangloff, and he has not shown any future harm is imminent. He thus lacks standing.

> **B.**   *The DHS Plaintiffs Lack Standing*

Defendants similarly demonstrated in the motion that the DHS Plaintiffs lack standing and that the four purported injuries identified in the complaint are insufficient to establish an Article III case or controversy. *See* Mot. at 13-15. The DHS Plaintiffs' responses are also lacking.

First, the DHS Plaintiffs also assert (at 8-9) that they are at risk of an automatic finding of wrongdoing if they do not cooperate with an IC inquiry or investigation. But Plaintiffs misread footnote 1 in the motion to say that Addendum A requires an automatic finding of wrongdoing for any noncooperation. *Id*. Addendum A concerns only requests for information made to an OIG—not to investigation subjects. Moreover, Ms. Fredricks and Mr. Read are not IGs, and although Mr. Cuffari is one, the Complaint appears to allege that he delegated the task of responding to the IC's requests, Compl. ¶ 68, making Addendum A, on its face, inapplicable to the DHS Plaintiffs here. Because Plaintiffs do not allege other facts showing a refusal to cooperate here would plausibly result in some sort of sanction, this claim of injury is meritless.

Second, the DHS Plaintiffs are not injured by being denied the services of agency counsel and, relatedly, by choosing to employ private counsel. Opp. at 5, 9. They identify no authority entitling them to taxpayer-funded counsel here. *Cf. Providing Representation for Fed. Employees*

*Under Investigation by Their I.G.*, 4B Op. O.L.C. 693, 693 (1980) ("Neither [DOJ] nor any other federal agency has authority to provide legal representation to a federal employee in disciplinary proceedings instituted by his own agency."). Plaintiffs therefore cannot rely on the denial of agency counsel as a cognizable injury to support standing.[3]

Further, the DHS Plaintiffs' decision to engage private counsel is not a cognizable injury. Mot. at 14-15. Their choice to retain counsel was their own and, thus, not traceable to Defendants' actions. *FEC v. Cruz*, 142 S. Ct. 1638 (2022), does not help them. In that case, a candidate chose to lend his campaign money, was prevented from repaying it in particular ways due to a regulation, and would have been harmed if the loan were not discharged, *id.* at 1646-47. The Court refused there to "recognize an exception to traceability for injuries that a party purposely incurs." *Id.* at 1647. But that is not this situation. Defendants have not restricted Plaintiffs' choice of private counsel. Rather, the DHS Plaintiffs are trying to use their voluntary decision to retain private counsel to challenge their inability to rely on agency counsel. *Cf. Falkowski v. EEOC*, 783 F.2d 252, 253 (D.C. Cir. 1986) (denial of representation is unreviewable). *Cruz* does not support their argument here.

Third, the DHS Plaintiffs' claim that they will be injured by a public report "that does not have to include anything they have said in their defense" is speculative and baseless. Opp. at 9.

---

[3] Plaintiffs suggest that the DOJ regulation governing representation of federal officials and employees, *see* 28 C.F.R. § 50.15, establishes a "default rule … to represent the individual unless [it is] not in the agency's interest," Opp. at 9. That is incorrect: it states that DOJ (not the agency), in its discretion, may provide such representation in certain circumstances. 28 C.F.R. § 50.15(a)(1). The regulation is thus irrelevant. Likewise, *Retaining Private Counsel to Represent the DHS Secretary in Impeachment Processes*, 2023 WL 2468411, Op. O.L.C. (Jan. 4, 2023), does not recognize a right to counsel. That opinion concerns whether an agency may—not must—retain private counsel to assist in impeachment proceedings for official actions in certain circumstances. *Id.* at *1. These authorities establish, at most, that Plaintiffs could request DOJ representation or government-funded private counsel—not that they have a right to it that *Defendants* have denied.

Any report's contents depend entirely on the results of any inquiry or investigation, and Plaintiffs have not alleged any facts showing that a damaging one is "certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 417 (2013). In addition, 5 U.S.C. § 424(d)(7)(B)(IV) and the ICPPs (at 10-11) guarantee any investigation subject "an opportunity to respond to any [IC] report" before it is finalized, and they allege no facts suggesting that opportunity would not be provided.

Fourth, the DHS Plaintiffs' claim that they are injured by "being subject[ed] to an unconstitutional body" is not sufficient. Opp. at 7 n.3. They appear to be asserting a "here and now injury" based on an Appointments Clause violation. *Id.* at 10 (collecting cases). However, the IC—unlike the officials in the cited cases—is not an adjudicator. And because the IC cannot discipline the DHS Plaintiffs, they are not being *subjected* "to an illegitimate proceeding, led by an illegitimate decision maker." *Id.* (quoting *Axon Enter., Inc. v. FTC*, 143 S. Ct. 890, 904 (2023)). Regardless, this so-called injury could support only Plaintiffs' Appointments Clause claim, which fails on the merits. *See* Mot. at 15 n.3; p. 10-12, *infra*.

Fifth, despite Plaintiffs' assertions that the "gravamen of the [c]omplaint" is that investigations of them were brought "in retaliation and bad faith," Opp. at 8, only Ms. Fredricks alleges that the inquiries and investigations were initiated improperly and, accordingly, injure her, *see* Compl. ¶ 42. Even accepting this allegation as true (which it is not), Ms. Fredricks has not alleged a cognizable injury. *Cf. United States v. Powell*, 379 U.S. 48, 57 (1964) (noting an agency "can investigate … just because it wants assurance that" "the law is [not] being violated"). The IC has not compelled her cooperation, it lacks authority to discipline her, and she has not alleged that her personal rights have been adversely affected. *Cf. Clark*, 750 F.2d at 94. Any decision Ms. Fredricks has made to comply with the alleged inquiries and investigations is voluntary. *See Nat'l Council for Adoption v. Jewell*, 156 F. Supp. 3d 727, 734 (E.D. Va. 2015).

Sixth, Mr. Cuffari does not face an impossible choice between (1) cooperating with an IC investigation and having to "shar[e] information about criminal investigations" and (2) not cooperating and "risk[ing] an automatic adverse finding." Opp. at 9. As explained, if Mr. Cuffari has appropriately recused himself from deciding whether the OIG will cooperate with an IC request involving him, Addendum A does not apply. More importantly, Mr. Cuffari has an obligation to report information relating to violations of criminal law involving government officers and employees to DOJ in certain circumstances, *see* 28 U.S.C. § 535(b), and to the extent the IC requires this information as part of its work, the IC, DOJ, and DHS OIG will resolve any conflict. *See also ICPPs*, Add. A ¶ C (process for when IG believes information cannot lawfully be shared with IC). Mr. Cuffari has no *personal* interest in how any such conflict is resolved.[4]

Finally, Mr. Read's claim (at 9) that he is injured by "not being able to advise his client and proceed according to his best professional judgment" fails because Mr. Read's client is DHS OIG—not Mr. Cuffari personally. He does not allege that the IC is, in any way, limiting the advice that he can provide to the agency. Further, government regulations and opinions make clear that Mr. Read cannot provide personal representation to Mr. Cuffari in an IC inquiry, *see supra* at 5-6 & n.3, and separately, any such representation could also raise issues under the rules of professional conduct. *See, e.g.*, D.C. R. of Prof. Conduct 1.2(a), 1.7(a).

### C.  None of Plaintiffs' Claims Is Ripe.

The Court also lacks jurisdiction because Plaintiffs' claims are not ripe. Mot. at 10-13, 15. Plaintiffs barely address ripeness, except to label the doctrine "prudential" and attempt to distinguish two of the eight cases cited by Defendants. Opp. at 6-7.

---

[4] Plaintiffs cite the Justice Manual as support for Mr. Cuffari's purported obligation not to provide agency information pertaining to unspecified criminal investigations, Opp. at 15, but that manual (1) applies to DOJ personnel and (2) "does not create any rights enforceable in law or otherwise."

Contrary to Plaintiffs' description of ripeness as a "prudential" doctrine, the Supreme Court has characterized "[r]ipeness [a]s a justiciability doctrine" "drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 807-08 (2003). "[E]ven in a case raising only prudential concerns," the Court can raise "the question of ripeness" on its own. *Id.* at 808.

More importantly, Plaintiffs' efforts to distinguish *National Park Hospitality* and *Texas v. United States*, 523 U.S. 296 (1998), fail to overcome Defendants' showing that judicial review is premature here, *see* Mot. at 12-13 (citing *FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 242 (1980); *Univ. of Med. & Dentistry of N.J. v. Corrigan*, 347 F.3d 57, 64 (3d Cir. 2003)). Plaintiffs' assertion (at 6) that they "are litigating 'concrete disputes'" does not make *National Park Hospitality* inapplicable. Indeed, that case presented an analogous situation where the challenged regulation itself—like the inquiries and investigations at issue here—did "not create 'adverse effects of a strictly legal kind,'" and the Court held that the plaintiff needed to wait until enforcement resulted in "a concrete dispute about a particular concession contract." *Nat'l Park Hosp.*, 538 U.S. at 809, 812. *Texas* is similar. Those claims were not ripe because it was "speculative whether the problem Texas presents will ever need solving." 523 U.S. at 302. The same is true for Plaintiffs' concerns regarding the outcome of any inquiry or investigation here. And that is why the Third Circuit rejected a challenge to an OIG investigation, holding that "[t]he decision to investigate is normally seen as a *preliminary* step–non-final by definition–leading toward the possibility of a 'final action,'" and until that final action occurs, such claims are not ripe. *Univ. of Med. & Dentistry*, 347 F.3d at 69. The same applies to Plaintiffs' claims.

## II.   Plaintiffs' Claims Fail As A Matter Of Law

### A.   *There Is No Appointments Clause Violation (Count 1)*

1.   Plaintiffs' Appointments Clause claim fails because the IC members are already

properly appointed, and their IC duties are germane to their ordinary duties, meaning the Appointments Clause does not apply. *See* Mot. at 16-19 (citing, *inter alia*, *Jefferson v. Harris*, 285 F. Supp. 3d 173, 189-90 (D.D.C. 2018) (rejecting Appointments Clause challenge to the IC)). Plaintiffs' responses miss the mark. *See* Opp. at 10-13.

      Plaintiffs are wrong that a series of Supreme Court decisions makes *Jefferson* outdated. Opp. at 10. Only two of those cases even involve the merits of Appointments Clause claims: *Lucia v. SEC*, 138 S. Ct. 2044 (2018), which held that SEC administrative law judges are inferior officers and were not appointed properly, *see id.* at 2055, and *United States v. Arthrex, Inc.*, 141 S. Ct. 1970 (2021), which concluded that the Director of the Patent and Trademark Office must have discretion to review Administrative Patent Judges' decisions for them to be appropriately appointed inferior officers, *id.* at 1988.[5] Neither of them is relevant to *Jefferson*'s conclusion that an Appointments Clause challenge to the IC was "futile" based on *Weiss v. United States*, 510 U.S. 163 (1994), even assuming IC members qualify as inferior officers. 285 F. Supp. 3d at 189.

      Plaintiffs' efforts to distinguish *Weiss* on the grounds that the six IC members are not properly appointed government officials fall short. To start, Plaintiffs appear to concede that the two IG members (Mr. Monheim and Ms. Ennis), who were appointed by the President and confirmed by the Senate, can serve on the IC. Opp. at 12. They nevertheless challenge the appointments of the Amtrak IG (Mr. Winters) and the Corporation for Public Broadcasting (CPB) IG (Ms. Howell). *Id.* at 11 (citing Compl. ¶ 178), 13 (citing Compl. ¶¶ 185-87). However, as Defendants explained, *see* Mot. at 17-18, both Amtrak and CPB are controlled by boards of directors whose voting members are presidentially appointed and Senate-confirmed. 49 U.S.C.

---

[5] The others concern issues not in this case. *See Axon*, 143 S. Ct. at 897 (statutory jurisdiction); *Seila Law LLC v. CFPB*, 140 S. Ct. 2183, 2192 (2020) (removal power); *Collins v. Yellen*, 141 S. Ct. 1761, 1787 (2021) (same).

§ 24302(a); 47 U.S.C. § 396(c). Those boards appointed both IGs (and may remove them), and thus, Mr. Winters and Ms. Howell are properly appointed inferior officers. Finally, as to the FBI and Office of Government Ethics (OGE) representatives on the IC, Plaintiffs assert that they are also not properly appointed. *See* Opp. at 11 & n.4. However, representatives of the FBI and OGE are required to serve on the IC, 5 U.S.C. § 424(d)(2)(A), the individual representatives are selected by the FBI and OGE directors or their designees, and are ultimately accountable to the FBI and OGE directors. In the end, each member of the IC is a properly appointed official, as *Jefferson* concluded. 285 F. Supp. 3d at 189-90.[6]

Further, Plaintiffs assert that the IC members' duties are not "'germane' to the IG roles of each member" because the IC can "obtain any document from any agency." Opp. at 12. But that is a superficial difference in degree, not kind. IC members supervise the same sort of investigations that OIGs conduct every day. Mot. at 18-19. Whether the IC members' duties are germane to their day-job duties, moreover, is a question of law—not fact, *contra* Opp. at 12. *See Weiss*, 510 U.S. at 174-75; *Shoemaker v. United States*, 147 U.S. 282, 301 (1893). Even so, Plaintiffs do not allege sufficient *facts* showing that it can "fairly be said" that the IC members' responsibilities are "dissimilar to, or outside of the sphere of, their official duties," *Shoemaker*, 147 U.S. at 301, and the Court should not entertain Plaintiffs' conclusory (and inaccurate) briefing statements to the contrary. *See Walters*, 684 F.3d at 439.

    2.    The Appointments Clause claim also fails because the position of IC member by itself does not require a constitutional appointment. *See* Mot. at 19-20 (citing *Lucia*, 138 S. Ct. at

---

[6] Even if the Court were to conclude that certain IC members were not properly appointed, it does not matter so long as four members of the IC are properly appointed. *See* Mot. at 17. Citing *Nguyen v. United States*, 539 U.S. 69, 82 (2003), Plaintiffs take issue with this point, Opp. at 12, but that case concerned a court of appeals panel that *never* had statutory authority to issue a decision. Here, the IC has such statutory authority. *See* 5 U.S.C. § 424(d).

2051-53; *Jefferson*, 285 F. Supp. 3d at 188-89). Plaintiffs' two objections lack merit.

First, Plaintiffs contend that "[t]he IC's powers are significant" because it "has authority to investigate allegations of misconduct leveled against scores, if not hundreds, of executive branch employees." Opp. at 11. But the only bases that they identify to contrast the IC with "employees of the Justice Department who possess investigatory powers" (and do not require appointment) are that "IC members are not supervised in the exercise of their IC duties by *anyone* in the executive branch" and that "the four non-PAS members of the IC are not removable by the President." Opp. at 12. Neither assertion is valid. In fact, each IC member is supervised by the President or an appropriately appointed principal officer. The President can remove Mr. Monheim and Ms. Ennis from their IG positions directly; the Amtrak and CPB boards may remove Mr. Winters and Ms. Howell from their IG positions, and if the boards refuse to do so, the individual board members can be removed by the President; and the FBI and OGE directors can remove the FBI and OGE officials from the IC. *See Myers v. United States*, 272 U.S. 52, 161 (1926) ("The power to remove inferior executive officers … is an incident of the power to appoint them."). And stopping short of that, Plaintiffs cite no provision of law that would preclude the Council Chairperson—currently the Inspector General for the Department of the Interior—from removing an IG from the IC. *Id.*

Second, Plaintiffs object to the IC's day-to-day autonomy. Opp. at 11. That the Council Chairperson or other officials do not interfere with the IC as a matter of practice, however, does not mean that the President or certain principal officers lack supervisory authority. *See, e.g., Arthrex*, 141 S. Ct. at 1988. Indeed, the President, agency heads, and appropriately appointed IGs are the only officers who may carry out the IC's recommendations.

### B.    *Plaintiffs' Nondelegation Claim Fails (Count II)*

As explained, Plaintiffs' private nondelegation claim fails because the political branches and CIGIE, more specifically, have not delegated investigatory authority to private entities, and

even if the Amtrak and CPB IGs are not considered government officials, they function subordinately to the IC and CIGIE and depend on the investigation subject's appointing authority to carry out any recommendations. *See* Mot. at 20-21 (citing, *inter alia*, *Sunshine Anthracite Coal Co. v. Adkins*, 310 U.S. 381, 399 (1940)). Plaintiffs do not defend the Complaint's reliance on *Association of American Railroads v. Department of Transportation*, 721 F.3d 666 (D.C. Cir. 2013), but instead respond with two other meritless points.

First, Supreme Court precedent contradicts Plaintiffs' contention that, unlike Amtrak, the CPB is a "private non-profit" for these purposes and, thus, that the CPB IG cannot exercise government authority. Opp. at 13. Like the CPB, Amtrak is "nominally a private corporation," yet the Supreme Court has held that "where … the Government creates a corporation by special law, for the furtherance of governmental objectives, and retains for itself permanent authority to appoint a majority of the directors of that corporation, the corporation is part of the Government" for constitutional purposes. *Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374, 399 (1995); *see also Dep't of Transp. v. Ass'n of Am. R.R.*, 575 U.S. 43, 54 (2015) (rejecting private nondelegation challenge because Amtrak is "[g]overnment entity"). The CPB—as *Lebron* recognized, 513 U.S. at 391—shares these characteristics with Amtrak, and thus, it too is a government entity whose IG may exercise governmental power.

Second, Plaintiffs' assertion (at 13-14) that the CPB IG and the IC are not supervised by government officers is wrong for the reasons explained above. *A.L.A. Schechter Poultry Corp. v United States*, 295 U.S. 495, 537 (1935)—a public nondelegation case—and *National Horsemen's Benevolent & Protective Association v. Black*, 53 F.4th 869 (5th Cir. 2022)—a case about delegated rulemaking, not investigatory, authority—do not address whether the CPB IG or the IC function subordinately to government officers under *Adkins*. This claim fails.

## C.  *Notice And Comment Rulemaking Is Not Required (Count III)*

Congress expressly authorized the IC to issue its ICPPs, and those ICPPs—which govern the procedures by which the IC carries out its non-binding, investigatory functions—are exempt from notice and comment. Mot. at 22-23. Plaintiffs' response is unavailing.

Plaintiffs appear to agree that Congress directed the IC to "establish policies and procedures," yet argue that the ICPPs amount to an impermissible rulemaking rather than a set of policies and procedures that fall within the APA's exception to notice-and-comment rulemaking. Opp. at 14 (comparing 5 U.S.C. § 424(d)(7)(B) *with id.* § 424(d)(12)(C)). But that is a distinction without a difference here because the ICPPs are "interpretive rules, general statements of policy, or rules of agency organization, procedure, or practice" and are, thus, exempt from procedural restrictions on substantive rules. 5 U.S.C. § 553(a), (b)(3)(A). Indeed, that Congress expressly used the terms "policies and procedures," and directed only that the IC "submit a copy" of those policies and procedures to congressional committees, *see* 5 U.S.C. § 424(d)(7)(B)(iii), underscores that Congress did not intend to require notice and comment.

Nevertheless, Plaintiffs identify four provisions that they think fall outside of that exception, Opp. at 14-15, but none does. First, Plaintiffs argue that the IC has instituted a rule preventing agency counsel from representing subjects in government misconduct investigations, but as Defendants have explained, the IC promulgated no such rule; rather it is a practice that applies across the executive branch. *See* Mot. at 23 n.6, 26; *see also infra* at 5-6 & n.3.

Next, Plaintiffs challenge ICPP Sections 2 and 7.A, which explain that the IC may consider complaints of wrongdoing against covered persons after they have left office and set forth the IC's definition of "wrongdoing," respectively. But these provisions are interpretive rules exempt from notice and comment under the APA. These provisions set forth the considerations the IC will make in determining "whether to initiate an investigation," 5 U.S.C. § 424(d)(7)(B)(i)(I). Congress

14

directed the IC to investigate "allegations of wrongdoing." *Id.* § 424(d)(1). ICPP Section 7.A thus properly sets forth the IC's interpretation of this mandate's meaning, that is, it "advise[s] the public of the agency's construction of the statutes and rules which it administers." *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 97 (2015). The same goes for Section 2, which also reflects the agency's interpretation of the scope of "Inspectors General and staff members" as used in 5 U.S.C. § 424(d)(1). *See supra* at 4. This interpretation does not change the standards by which a former staff member's actions will be judged.

Plaintiffs also argue that ICCP Addendum A "purports to expand the IC's authority" by allowing the IC to make an independent finding of wrongdoing against an IG or "other person with full and final authority to provide access under this section" who refuses to comply with an IC request for agency information. Opp. at 14-15; *ICPPs*, Add. A ¶¶ A, E. But the Addendum sets forth a procedure for "conducting investigations," *see* 5 U.S.C. § 424(d)(7)(B)(i)(III), specifically, the process by which the IC obtains information from an agency in the course of an investigation. Addendum A is also interpretive. The statute is clear that the IC has the authority to investigate allegations of wrongdoing against covered persons and that "the head" of each CIGIE member "shall provide assistance necessary to the Integrity Committee." 5 U.S.C. § 424(d)(6)(B)(i). Addendum A is the IC's interpretation of how an OIG should render that assistance in the context of a request for information and how it will document any failure to render that required assistance. Contrary to Plaintiffs' argument, Opp. at 14-15, Addendum A does not "expand" the IC's authority to investigate; rather, it describes the IC's procedures for the circumstance in which an agency declines to comply with an *existing* inquiry or investigation. And in any event, Plaintiffs provide no specific argument that that OIG personnel with "full and final authority to provide access" to agency information would, in the main, fall outside the OIG "staff members" who are within the

IC's jurisdiction. 5 U.S.C. § 424(d)(4); *ICPPs* ¶ I.4; *JEM Broad. Co. v. FCC*, 22 F.3d 320, 326 (D.C. Cir. 1994). And thus, Count III should be dismissed.

### D. *Plaintiffs' Due Process Claims Fail (Counts IV and V)*

Plaintiffs are not entitled to specific procedural protections in the IC's investigations, as they are not adjudicative. Mot. at 24-27. Additionally, Plaintiffs have failed to allege a deprivation of any cognizable liberty or property interest, and extensive authority contradicts Plaintiffs' claims.

1.      The "Due Process Clause is not implicated [here] ... because an administrative investigation adjudicates no legal rights." *SEC v. Jerry T. O'Brien, Inc.*, 467 U.S. 735, 742 (1984); *see also Georator Corp. v. EEOC*, 592 F.2d 765, 768 (4th Cir. 1979). Plaintiffs have conceded that the IC's investigation is not adjudicative, and argue instead that, contrary to binding precedent, they may bring a "more limited" due process claim regarding the IC's investigation. Opp. at 17. But Plaintiffs have failed to put forth *any* authority supporting that argument or negating the premise that they have no "entitlement to any particular set of due process protections in connection with" the investigations they challenge. *Popovic v. United States*, 997 F. Supp. 672, 679 (D. Md. 1998). Rather, Plaintiffs put forth a host of inapt comparisons.

Plaintiffs first argue that because there may be due process limits on *congressional* investigations, the Court should not dismiss their claims here. Opp. 16-17 (quoting *Watkins v. United States*, 354 U.S. 178, 187 (1957)). *Watkins*, however, involved an *adjudication*; specifically, the petitioner had been convicted for contempt of Congress.[7] Plaintiffs also invoke *Jenkins v. McKeithen*, 395 U.S. 411, (1969) (plurality op.), but in that case, the Court *reaffirmed*

---

[7] Even if the limitations recognized in *Watkins* did apply, Plaintiffs have not put forth allegations plausibly asserting that the IC's investigations are "conducted solely for the personal aggrandizement of the investigators or to 'punish' those investigated." *Id.* (quoting *Watkins*, 354 U.S. at 187); *see supra* at 7.

*Hannah v. Larche*, 363 U.S. 420, 443 (1960), and allowed the plaintiff's due process challenge because the commission at issue there "exercise[d] a function very much akin to making an official adjudication of criminal culpability"; indeed, it was *required* to make probable cause findings and could file charges against individuals. *Jenkins*, 395 U.S. at 416-17, 428. The IC has no such power.

Plaintiffs' other comparisons are equally far afield. Plaintiffs analogize to cases addressing self-incrimination during custodial police interrogations. *See* Opp. at 17 (citing *Miranda v. Arizona*, 384 U.S. 436, 445 (1966); *Dickerson v. United States*, 530 U.S. 428 (2000)). But the IC here has requested only voluntary interviews, *see, e.g.*, *id.*, Ex. 1, and in any event, the remedy in Plaintiffs' cases is exclusion of evidence from a criminal proceeding, not an injunction against the investigation. *Wiley v. Mayor & City Council of Balt.*, 48 F.3d 773, 777 (4th Cir. 1995).

Plaintiffs also analogize to the grand jury context. Opp. at 17. Even assuming that analogy is apt, Plaintiffs fail to cite any authority showing they could bring a due process claim like theirs in that context. Plaintiffs cite a plurality opinion in which three justices found a due process right against *discrimination* on petit and grand juries, *Peters v. Kiff*, 407 U.S. 493 (1972); *see also Rogers v. Pearson*, 2012 WL 3691085, at *11 (E.D. Va. Aug. 27, 2012) (holding there is no clearly established due process right to challenge the composition of a grand jury); a case involving a defendant's right to *invoke* the Fifth Amendment privilege against self-incrimination in a grand jury proceeding, *United States v. Kennedy*, 372 F.3d 686, 691-92 (4th Cir. 2004); and a case involving a due process challenge to the Court's *in camera* review of grand jury material in support of the government's motion to disqualify a witness's choice of counsel, *In re Taylor*, 567 F.2d 1183, 1188 (2d Cir. 1977). None of that is present here.[8]

---

[8] As explained above, the IC has not compelled cooperation from Plaintiffs, and they conflate the *agency's* duty to comply with an investigation, *see* 5 U.S.C. § 424(d)(6)(B)(i); *ICPPs*, App. A

In essence, Plaintiffs ask this Court to ignore binding authority that forecloses their Due Process claims in favor of analogizing to circumstances that neither apply here nor themselves support the claims Plaintiffs purport to bring. The Court should reject this request.

2.     Even if a due process claim were available to Plaintiffs, as Defendants explained in their motion (at 25-27), Plaintiffs have failed to identify a cognizable liberty or property interest that could support such a claim. Plaintiffs have not addressed any of Defendants' arguments, and do not appear to argue in their response that any Plaintiff, other than Mr. Read, has such an interest.

As to Mr. Read, Plaintiffs are wrong that "Mr. Read has a liberty interest, a first amendment right and a legal duty" to advise "DHS OIG." Opp. at 18 (citing Compl. ¶¶ 111-13). At the outset, "[a]ttorneys simply do not have a constitutionally protected property or liberty interest in representing a given client in a given case." *DePaoli v. Carlton*, 878 F. Supp. 1351, 1357 (E.D. Cal. 1995).[9] And in any event, Plaintiffs have *not* alleged that Mr. Read was prevented from advising DHS OIG; instead, they allege that the IC informed Mr. Read he could not advise *Mr. Cuffari*, who is not his client, in the IC's misconduct investigation, consistent with widespread executive branch practice. *See* Compl. ¶¶ 111-13; Mot. at 26. And although Plaintiffs claim, without any supporting citation, that CIGIE has pre-decided it will make its report in at least one matter publicly available, Plaintiffs do not counter the proposition that reputational harm, standing alone, is insufficient to establish a liberty interest. *See* Mot. at 25. No Plaintiff, therefore, has

¶¶ A, E, with the voluntary nature of *their* cooperation with an investigation, *see* Opp., Ex. 1 (requesting voluntary interview); Compl., Ex. 3 at 2 (voluntary submission of documents).

[9] *United Transp. Union v. State Bar of Mich.*, 401 U.S. 576, 580 (1971), on which Plaintiffs rely (Opp. at 18), is not to the contrary. It analyzes the First Amendment right to engage in "collective activity … to obtain meaningful access to the courts," *id.* at 585-86, which Plaintiffs do not claim here. Indeed, the *United Transportation* line of cases "distinguish[es] between the commercial practice of law and associating for non-commercial purposes to advocate the enforcement of legal and constitutional rights," *see Cap. Assoc. Indus., Inc. v. Stein*, 922 F.3d 198, 205 (4th Cir. 2019) (limits on legal organization's associations and speech did not violate First Amendment).

asserted a cognizable liberty or property interest.

3. Finally, Plaintiffs have failed to address Defendants' arguments that they are not, as a matter of law, entitled to the procedural protections that they purportedly seek. They have therefore conceded these arguments. *See Amazon.com*, 2023 WL 2815140, at \*11.

As Defendants explained, and Plaintiffs have not contested, the presumption of innocence is "a creature of a criminal proceeding" that does not apply to an investigation. Mot. at 25-26 (quoting *Rosenthal v. Justices of the Supreme Ct. of Cal.*, 910 F.2d 561, 564 (9th Cir. 1999)). Plaintiffs argue that they have a due process right to agency documents and witnesses to aid them in their responses to the IC's inquiries, *see* Opp. at 17, but as the law makes clear, they do not. *See* Mot. at 26-27; *see also Fox ex. rel. v. Elk Run Coal Co.*, 739 F.3d 131, 139 (4th Cir. 2014) (no due process right to exculpatory evidence in an administrative adjudication). And to the extent that Plaintiffs complain about the IC's request for DHS OIG's or SSA OIG's information, or the agency time required to respond to these requests, they lack standing to do so. *See* Mot. at 15. Finally, Plaintiffs are not entitled to agency counsel representation in IC investigations for which they are subjects. *See* Mot. at 26; *supra* at 5-6 & n.3. Plaintiffs' due process claims should be dismissed.

### E. *Plaintiffs Have Conceded Their Appropriations Clause Claim (Count VI)*

The opposition fails to mention, let alone address, Defendants' argument that Plaintiffs have failed to state an Appropriations Clause claim. *See* Mot. at 27-30. Plaintiffs have therefore conceded this claim, and it should be dismissed. *See Amazon.com*, 2023 WL 2815140, at \*11.

19

## **CONCLUSION**

For the above-described reasons, and the reasons set forth in their opening brief, Defendants respectfully request that this Court dismiss this case for lack of subject matter jurisdiction or, in the alternative, for failure to state a claim upon which relief can be granted.

Dated: July 28, 2023

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

JESSICA D. ABER
*By*:                                UNITED STATES ATTORNEY

LAUREN A. WETZLER
Civil Chief, Office of the United States Attorney

_____/s/_____
REBECCA S. LEVENSON
Assistant United States Attorney
Office of the United States Attorney
2100 Jamieson Avenue
Alexandria, Virginia 22314
Tel:    (703) 299-3760
Fax:    (703) 299-3983
Email: rebecca.s.levenson@usdoj.gov

CHRISTOPHER R. HALL
Assistant Branch Director
Federal Programs Branch

CHRISTOPHER A. EISWERTH
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L. Street, NW
Washington, DC 20005
Telephone:    (202) 305-0568
Facsimile:    (202) 616-8460
Email: christopher.a.eiswerth@usdoj.gov

*Counsel for Defendants*